UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| DUNKIN' DONUTS FRANCHISED RESTAURANTS LLC, et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 13-13023-LTS |
| ANTON NADER, et al., | ) ) ) | |
| Defendants. | ) ) ) | |

ORDER ON PLAINTIFFS' MOTION FOR LEAVE TO FILE
FIRST AMENDED COMPLAINT (DOC. NO. 37) AND DEFENDANTS'
CROSS-MOTION TO DISMISS THE COMPLAINT (DOC. NO. 39)

September 17, 2014

SOROKIN, J.

In this action, the plaintiffs (collectively, "Dunkin'") assert breach of contract and violations of the Lanham Act by defendant Anton Nader and nine corporate entities purportedly controlled by him, each of which owns and operates a Dunkin' franchise in Staten Island, New York. The claims arise from Dunkin's allegation that Nader transferred interests in the corporate entities (and, thus, the Dunkin' franchises owned by them) to an individual named Leonard Tallo without Dunkin's knowledge or consent, contravening the relevant franchise agreements.[1] See

---

[1] According to Dunkin', the undisclosed transfers to Tallo violate the explicit language of the franchise agreements and contradict certifications regarding corporate ownership made by Nader when he executed the agreements. Additionally, Dunkin' claims it would not have approved Tallo as a part owner of the franchises because it previously had terminated separate franchise agreements with him based on violations of their terms. See Doc. No. 1 at ¶¶ 16, 45.

generally Doc. No. 1.[2]  Dunkin' claims it learned of Tallo's interest in the entities during a review of corporate documents it initiated in September 2012.  Id. at ¶¶ 46-48.[3]

Within two months of the initial scheduling conference, Dunkin' filed a motion seeking leave to amend its complaint to add twenty-four more corporate defendants, each purportedly controlled by Nader and associated with a Dunkin' franchise in either New York or New Jersey. See generally, Doc. Nos. 37, 38, 38-1.  The amendment is necessary, Dunkin' claims, because it learned after filing this action that Tallo is a minority owner of these additional entities as well. Doc. No. 38 at 2.  Dunkin' filed its motion on the deadline set by the Court for any amendments to the pleadings by the defendants, after the parties exchanged initial disclosures but before discovery began.  Id. at 1; Doc. No. 32.

The defendants have opposed Dunkin's motion to amend and cross-moved to dismiss the original complaint pursuant to Federal Rule of Civil Procedure 12(c).  Doc. No. 39.  The Court heard the parties on both motions on September 16, 2014.  The defendants oppose the motion to amend on four grounds.  For the following reasons, three of the defendants' arguments are meritless, and the fourth – which is also the basis for the motion to dismiss – is raised prematurely.  Accordingly, Dunkin's motion (Doc. No. 37) is ALLOWED, and the defendants' cross-motion (Doc. No. 39) is DENIED without prejudice to the defendants raising their statute

---

[2]Citations are to documents that are part of the docket and viewable via the Court's electronic filing system.  Where page numbers are cited, references are to the numbering placed at the top of each page by the electronic filing system.

[3]The facts considered by the Court and recounted here are taken from the original complaint, the proposed amended complaint, and Dunkin's answers to the defendants' counterclaims, see generally Doc. Nos. 1, 28, 38-1, with all reasonable inferences drawn in Dunkin's favor, see Curran v. Cousins, 509 F.3d 36, 43-44 (1st Cir. 2007).

2

of limitations challenge at summary judgment.[4]

First, the defendants urge the Court to deny leave to amend "because [Dunkin'] missed the filing deadline." Doc. No. 40 at 1; see id. at 6 n.2. This assertion is based on the fact that Dunkin' filed its motion two weeks after a date the parties included in the "Joint Discovery Plan and Proposed Pretrial Schedule" they filed before the Rule 16 conference. See Doc. No. 29 at 2. This particular "deadline," however, apparently was not adopted by the Court. See Doc. No. 32. Dunkin' filed its motion on the date when any motions to amend by the defendants were due – the only date reflected on the docket governing any sort of amendments to the pleadings. Id. The defendants do not suggest that the Court explicitly adopted the earlier deadline, but that the docket erroneously omits it. In any event, Dunkin' has filed its motion at the start of the litigation, before the parties have embarked on any significant discovery. In these circumstances, and in light of the Court's discretion pursuant to Rule 15(a) to "freely" grant leave to amend "when justice so requires," the timing of Dunkin's motion does not warrant denial thereof.[5]

Second, the defendants suggest that the amendment is futile because the New Jersey Franchise Practices Act ("NJFPA") "mandates that any claims against [the ten New Jersey franchises Dunkin' seeks to add as defendants] to terminate their franchises be filed in New

---

[4]The defendants have moved for a stay of discovery pending the Court's ruling on the motions to amend and dismiss. Doc. No. 53. That motion is DENIED. Within one week of this decision, the defendants shall produce responses to Dunkin's written discovery requests and subpoenas served on entities within defendants' control.

[5]The Court would reach the same conclusion even if the earlier deadline had been adopted, as it would find on the facts presented here that Dunkin' has established "good cause" for its request to amend.

3

Jersey." Id. at 7. The NJFPA, however, contains no such mandate. Cf. N.J. Stat. Ann. § 56:10-4 (identifying franchisees to which the NJFPA applies, but not specifying where litigation against such franchisees should occur); § 56:10-10 (permitting franchisees to seek injunctive relief against franchisors for alleged violations of the NJFPA via actions in New Jersey state court, but not requiring franchisors to sue there).

Perhaps recognizing the absence of any such statutory requirement, the defendants rely on Kubis & Perszyk Assocs., Inc. v. Sun Microsystems, Inc., 680 A.2d 618 (N.J. 1996). But that decision does not stand for the proposition that a franchisor must, as a matter of New Jersey law, sue a New Jersey franchisee in New Jersey. In Kubis, the New Jersey Supreme Court held "that forum-selection clauses in franchise agreements [subject to the NJFPA] are presumptively invalid, and [generally] should not be enforced," as such clauses would "den[y] a franchisee's right to obtain injunctive and other relief from a New Jersey court." Id. at 628. Dunkin' has not invoked a forum selection clause here. It simply has sued the defendants in a court with jurisdiction over the parties and the claims. See Doc. No. 1 at ¶¶ 17-19. This Court, like federal courts before it, can and will apply the requirements of the NJFPA if appropriate in the context of this action. See Doc. No. 45 at 7 (collecting cases). Accordingly, neither Kubis nor the NJFPA justify a finding that any portion of the proposed amendment is futile.[6]

Third, the defendants attempt to invoke the "first-filed rule," citing an action filed by the proposed defendants against Dunkin' in the Superior Court of New Jersey. Doc. No. 40 at 10-11. According to the defendants, the New Jersey action presents "substantially similar claims,"

---

[6]Kubis and the NJFPA have absolutely no application to the fourteen proposed defendants with New York franchises.

4

rendering Dunkin's proposed amendment futile and "a waste of judicial resources." Id. There are two problems with the defendants' effort to apply the first-filed rule here. One is that the First Circuit and various trial courts in this jurisdiction consistently have defined the first-filed rule as follows: "Where identical actions are proceeding concurrently ***in two federal courts***, entailing duplicative litigation and a waste of judicial resources, the first filed action is generally preferred in ***a choice-of-venue decision***." Cianbro Corp. v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987) (emphasis added); see OsComp Sys., Inc. v. Bakken Express, LLC, 930 F. Supp. 2d 261, 273-74 (D. Mass. 2013) (refusing to apply first-filed rule where the cited action was pending in Texas state court).[7] The rule has no application where one of the pending actions is in state court, as the proposed defendants' action is here. Additionally, the proposed defendants filed their New Jersey complaint on May 27, 2014 – six months after Dunkin' filed this action, and nearly two weeks after Dunkin' sought leave to amend. Thus, even if the rule were implicated where one case is pending in a state court, the action pending in this Court is more appropriately considered the "first-filed" one here. See OsComp Sys., 930 F. Supp. 2d at 274 (noting the rule should not apply "where a party engages in procedural fencing in order to preempt the other party's potential lawsuit against it" (internal quotations and alterations omitted)).

    Finally, the defendants challenge Dunkin's claims against all original and proposed

---

[7]The defendants partially acknowledge that the rule extends only to cases in which litigation is pending in two federal courts, but they inexplicably describe that view as "an aberration, rather than the current state of the law." Doc. No. 40 at 10 n.4. Even the cases the defendants cite apply the rule to pairs of federal actions. See, e.g., Biolitec, Inc. v. AngioDynamics, Inc. 581 F. Supp. 2d 152, 155 (D. Mass. 2008) (involving actions pending here and in the United States District Court for the Northern District of New York).

defendants as untimely under the applicable statutes of limitations.  In the defendants' view, this renders the proposed amendment futile and justifies dismissal of the original complaint.  The defendants base their statute of limitations challenge on the fact that Dunkin' invoked its right under the relevant franchise agreements to review documents pertaining to twenty-nine shops owned by Nader and his corporate entities in January 2008.  Doc. No. 24, Countercl. at ¶¶ 28-29.  Six of the entities (none of which are current or proposed defendants) produced corporate tax returns, and at least five of those included Schedule K-1s showing that Tallo was a minority owner of the entities.  Id. at ¶¶ 31-32; Doc. No. 28 at ¶ 28.  According to the defendants, this disclosure constituted inquiry notice to Dunkin' of Tallo's interest in any and all of Nader's enterprises, thus triggering the statute of limitations as to all claims and proposed claims in this suit.  Doc. No. 40 at 14-16.  Dunkin' disagrees, urging it received notice of Tallo's role in the relevant entities only during its 2012 document review or after filing this lawsuit.  Dunkin' supports its view by citing Nader's certifications of his sole ownership at the time each franchise agreement was signed, and noting that twenty-one of the entities here were formed after the 2008 document review had concluded.  Doc. No. 45 at 11-16.

Any assessment of when the relevant limitations period began to run, however, implicates a number of fact questions that cannot be resolved on the record as it now stands.  For example:

- What was the purpose of the 2008 review?  Who received the documents involved, including the tax returns, and what was done with them?

- Did Dunkin' treat Nader's shops as individual businesses or as a common group?  How did it treat other groups of shops with a common owner?

- When and in what forms did Nader certify to Dunkin' that he was the sole owner of each relevant entity?

- Did Dunkin' receive information during either review confirming that Nader was the exclusive owner of any Dunkin' shops? If so, how many?

Because questions such as these bear on a determination of when Dunkin's claims against the current and proposed defendants accrued, and because the record before the Court is not sufficiently developed at this stage of the litigation to permit resolution of such questions, the defendants' statute of limitations challenges are premature.[8] Thus, the statute of limitations does

---

[8]The Court also will have to determine the length of the applicable limitations periods. Here, twelve of the defendant entities are bound by franchise agreements which contain contractual limitations provisions requiring claims arising from the agreements to be brought "within two (2) years after the discovery of the facts giving rise to" the claims. See Doc. No. 40 at 5 (quoting the relevant contracts). Claims against the remaining twenty-one entities would be subject to the relevant statutes of limitations under Massachusetts law. The defendants urge the Court to disregard the fact that Dunkin's complaint, on its face, presents contractual claims – including claims that the defendants breached explicit provisions in each franchise agreement prohibiting fraud in the formation of the agreements – and to instead view Dunkin's claims as common law fraud claims subject to a three-year statute of limitations. Dunkin' disagrees, citing the six-year period which generally applies to contract actions such as this one.

The parties also disagree whether the two-year contractual period applicable to twelve of the defendants incorporates the concept of "inquiry notice." Dunkin' argues the provision requires "actual discovery" of the basis for a claim before the two-year period begins. Dunkin's interpretation suggests the provision – which, on its face, seems to express an agreement to impose a limitations period *shorter* than the six-year period applicable under Massachusetts law to contract claims – might in fact operate to *extend* the limitation period beyond six years where "actual notice" of the potential claim came long after "inquiry notice" might otherwise have occurred. It is not clear that the parties intended this result when forming the contract, or that the law would sanction such an agreement. Cf. Nat'l Bond & Inv. Co. v. Flaiger, 77 N.E.2d 772 (Mass. 1948) (invalidating a contractual agreement to waive "diligence in bringing suit," finding it eliminated statute of limitations defense and violated public policy). The defendants, on the other hand, argue the provision at issue incorporates the concept of "inquiry notice," citing cases prohibiting contractual language that would unreasonably shorten the limitation period without allowing for tolling thereof pursuant to the discovery rule. E.g., Creative Playthings Franchising, Corp. v. Reiser, 978 N.E.2d 765, 770 (Mass. 2012). Such cases do not necessarily control here, where the defendants seek to use the discovery rule to shorten, not extend, the time in which Dunkin' was required to bring suit.

These issues need not be resolved now, given the unsettled fact questions precluding a determination of when the relevant periods began to run. If, for example, discovery reveals that the circumstances surrounding the 2008 document review did not reasonably place Dunkin' on notice of its potential claims as to the current and/or proposed defendants, and instead suggests

not provide a basis for denying Dunkin's motion to amend or dismissing the original complaint at this time.

In light of the foregoing, Dunkin's motion to amend the complaint is ALLOWED, and the defendants' cross-motion to dismiss is DENIED. Dunkin' shall file its proposed First Amended Complaint (Doc. No. 38-1) forthwith, and the defendants shall respond thereto within fourteen days of this Order. The defendants may revisit their statute of limitations challenge in an appropriate dispositive motion after relevant discovery has been conducted.

SO ORDERED.

/s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge

---

that Dunkin' acquired such notice during the 2012 review, then Dunkin's claims are timely regardless which limitations period applies. Accordingly, legal issues related to the contractual language and all other statute of limitations questions are more appropriately addressed together at summary judgment, after full briefing on a complete set of facts.